FILED

May 11, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 11:32 AM



## COURT OF WORKERS' COMPENSATION CLAIMS
### DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE: Sarah Sanders**

**EMPLOYER: Regis Corp., d/b/a SmartStyle**

**INSURANCE CARRIER/TPA: Sedgwick
CMS**

**DOCKET #: 2015-06-0017**
**STATE FILE #: 2292-2015**
**DATE OF INJURY: December 30, 2014**

### EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge on April 6, 2015, upon the Request for Expedited Hearing filed by Sarah Sanders, Employee, on February 25, 2015, pursuant to Tennessee Code Annotated section 50-6-239 to determine if Employer, Regis Corp. d/b/a SmartStyle ("SmartStyle"), is obligated to provide temporary disability and/or medical benefits.

The undersigned Workers' Compensation Judge conducted an in-person Expedited Hearing. Considering the applicable law, the evidence and the technical record, and the parties' arguments, this Court finds that Ms. Sanders did not sustain a compensable injury and is not entitled to the requested relief.

### ANALYSIS

#### Issue

Whether Ms. Sanders sustained an injury that arose primarily out of and in the course and scope of employment with SmartStyle.

#### Evidence Submitted

The Court admitted the following documentation into evidence:

> Exh. A: Medical records of Sarah Sanders
> Exh. B: Affidavit of Sarah Sanders
> Exh. C: Orders of Protection from Davidson County General Sessions court
> Exh. D: CJIS online records
> Exh. E: Davidson County/General Sessions Court, Order Granting Bail for Abuse Cases, December 30, 2014
> Exh. F: Davidson County/General Sessions Court, Affidavit, filed March 2, 2015

1

Exh. G: SmartStyle Company Security Regulations
Exh. H: Regis Corporation Employee Termination Notice, January 15, 2015
Exh. I: Form C-23, Notice of Denial, February 5, 2015
Exh. J: Form C-27, Notice of Controversy, January 15, 2015
Exh. K: Surveillance video from Walmart security cameras on December 30, 2014.
Exh. L: Affidavit Ashley Hughes (for identification purposes only).

The Court designated the following as the technical record:

- Petition for Benefit Determination, January 13, 2015
- Dispute Certification Notice, February 27, 2015
- Request for Expedited Hearing, February 25, 2015.

The Court did not consider attachments to the above filings not admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings and their attachments as allegations unless established by the evidence.

The following witnesses testified in-person:

- Sarah Sanders
- Chuck Cargyle, regional manager for SmartStyle.

**History of Claim**

Ms. Sanders is a 55-year-old resident of Davidson County, Tennessee who worked for SmartStyle, a hair salon operating out of an area Walmart. She testified that on December 30, 2014, she reported to her district manager that Lisa Mickler, her cousin-in-law who was also a client of SmartStyle, had entered the salon on the previous evening and began "acting out" by talking about religion, politics, and homosexuals. Ms. Sanders told her not to talk about those subjects and instructed her to leave the salon. Ms. Sanders' testified that Ms. Mickler returned to SmartStyle on the evening of December 30, and "pushed up against her" while Ms. Sanders worked with a client. Ms. Sanders further testified that Ms. Mickler left SmartStyle and entered Walmart. Ms. Sanders testified that she proceeded out of SmartStyle and into Walmart to seek assistance from security. When she reached the door, she engaged Ms. Mickler, who was approximately thirty (30) feet away, in a conversation and Ms. Mickler returned to Ms. Sanders and "pushed" her. Walmart's security camera captured the incident. (Exh. K).

Ms. Sanders called the police. When the police arrived, Mr. Sanders testified that Ms. Mickler's daughter, Shalisa Cloyd, entered SmartStyle and, while Ms. Sanders talked with a police officer, struck her in the head with something. The police officer arrested Ms. Sanders and Ms. Cloyd but the charges against Ms. Sanders were evenutally dropped. The Davidson County General Sessions court later granted Ms. Sanders orders of protection against Ms. Mickler and Ms. Cloyd.

Ms. Sanders posted bail and returned to work at SmartStyle on the morning of December 31, 2014.  Later that day, SmartStyle terminated Ms. Sanders.  SmartStyle memorialized the termination in a notice issued on January 15, 2015. (Exh. H).  The notice states that Ms. Sanders "[e]ngaged in violent behavior (fist fight brawl) with guest on the floor of Walmart."  It further reads:

> On 12/30/2014 while on the clock and servicing a guest in her chair Sara (sic.) exited the salon, abandoning the guest she was servicing and leaving the salon unattended, and went into the sales floor of Walmart where she engaged in a physical confrontation with another guest which escalated into a fist fight.  These actions violated Company Security regulations #4 (leaving salon unattended), #24 (engaging in violence), and #29 (actions detrimental to maintaining our relationship with Walmart.

The rules referenced within this narrative are contained on the SmartStyle Company Security Regulations (Exh. I). Chuck Cargyle, a regional director for SmartStyle, testified that he participated in the investigation and communicated the termination to Ms. Sanders.

Ms. Sanders sought treatment at St. Thomas Midtown Hospital on January 8, 2015.  After an examination and reviewing reports from x-ray and CT scans, Dr. Michael Levitt diagnosed a head contusion and contusions of the face and hip.  He prescribed pain medications and recommended follow-up with a primary care physician.  Ms. Sanders was released that same day.

Ms. Sanders filed a workers' compensation claim against SmartStyle based on the December 30, 2014 altercation.  SmartStyle denied the claim on February 5, 2015 (Exh. I). It has not authorized any medical benefits nor has it paid temporary disability benefits.  After mediation failed, Ms. Sanders filed a Request for Expedited Hearing seeking same.  At the Expedited Hearing, she additionally requested that SmartStyle pay outstanding medical bills from the January 8, 2015 visit to St. Thomas Midtown, although this issue was not listed on the Dispute Certification Notice.

### Ms. Sanders' Contentions

Ms. Sanders contends she sustained a compensable injury when Ms. Cloyd assaulted her at work.  She maintains that Ms. Cloyd acted as the aggressor and that, because the incident occurred at work, SmartStyle should pay the cost of her medical bills.

### Smart Style's Contentions

SmartStyle contends Ms. Sanders' injuries are not compensable because they resulted from an inherently private dispute.  Whether Ms. Cloyd, Ms. Mickler, or Ms. Sanders acted as the aggressor is irrelevant.  Smart Style properly denied the claim and is not liable for past or future medical or disability benefits.

3

## Findings of Fact and Conclusions of Law

*Standard Applied*

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003). In a workers' compensation action, pursuant to Tennessee Code Annotated section 50-6-239(c)(6), the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. However, at the interlocutory, Expedited Hearing phase, the employee need not prove each and every element of his or her claim by a preponderance of the evidence to be entitled to temporary disability or medical benefits, but must instead present evidence sufficient for the trial court to conclude that the employee would likely prevail at a hearing on the merits in accordance with the express terms of section 50-6-239(d)(1). *McCord v. Advantage Human Resourcing,* No. 79894-2014, Tennessee Workers' Compensation Appeals Board, March 27, 2015. The employee must show that the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13) (2014). The workers' compensation law shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor the employer. Tenn. Code Ann. § 50-6-116 (2014).

*Dispositive Factual Finding*

On December 30, 2014, Ms. Sanders engaged in an altercation that resulted in her physical injury. The physical altercation resulted from an inherently private dispute.

*Application of Law to Facts*

*Ms. Sanders' injury did not arise primarily out of and in the course and scope of her employment with Smart Style.*

Tennessee Code Annotated Section 50-6-102(13) defines an injury as follows:

> "Injury" or "personal injury" mean an injury by accident … arising primarily out of and in the course and scope of employment, that causes …the need for medical treatment of the employee; provided, that:
>
> (A)    An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment … [.]

Tenn. Code Ann. § 50-6-102(13)(A) (2014). An injury occurs in the "course of employment" if it takes place while the employee performs a duty she was employed to perform. *Fink v. Caudle,*

856 S.W.2d 952, 958 (Tenn. Workers' Comp. Panel, 1993). In this case, Ms. Sanders and Ms. Mickler spoke the words that led to the assault while Ms. Sanders was at work performing her assigned duties. However, the assault itself did not occur while she was styling hair, and in fact she abandoned the workplace immediately prior to the assault. Therefore, the injury did not occur in the course of her employment.

With regard to whether the injury arose primarily out of Ms. Sanders' employment, the statutory definition of "injury" additionally provides: "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014).

The Tennessee Supreme Court recognized the following three categories for workplace assaults:

> (1) Assaults with an "inherent connection" to employment, such as disputes over performance, pay, or termination;
>
> (2) Assaults stemming from "inherently private" disputes imported into the employment setting from the claimant's domestic or private life and not exacerbated by the employment; and,
>
> (3) Assaults resulting from a "neutral force" such as random assaults on employees by individuals outside the employment relationship.

*Woods v. Harry B. Woods Plumbing Co.*, 967 S.W.2d 768, 771 (Tenn. 1998). Assaults falling into the first category are compensable. *Wait v. Travelers Indem. Co. of Ill.*, 240 S.W.3d 220, 227 (Tenn. 2007). Assaults falling into the second category are not. *Woods,* at 771. The compensability of assaults falling into the third category "depend[s] on the facts and circumstances of the employment." *Id.*

Ms. Sanders' injury does not fall into the first category because the dispute between her, Ms. Mickler, and Ms. Cloyd had no inherent connection to her employment. The dispute did not stem from "performance, pay, or termination," or any matter that appears to have a connection to work. Rather, the dispute arose from a disagreement over comments Ms. Mickler made concerning religion, politics, and homosexuals. Further, the assault cannot be classified as resulting from a "neutral force," because it was not a "random assault… by individuals outside the employment relationship." Ms. Mickler is Ms. Sanders' cousin-in-law, and Ms. Cloyd is Ms. Mickler's daughter, and the altercation, therefore, cannot be classified as "random."

Considering Ms. Sanders' testimony and Affidavit, as well as the General Sessions Court records, the incident is best-labelled as an "inherently private dispute," not exacerbated by the employment. Their disagreement could have occurred anywhere. In fact, the altercation with Ms. Mickler did not take place in SmartStyle but in Walmart. Furthermore, the mere fact that it happened after Ms. Mickler patronized SmartStyle does not persuade the Court that a sufficient connection to her work exists, especially considering that Ms. Sanders provided Ms. Mickler

services for free. Nor is it this Court's role to determine who provoked whom. Based on the evidence presented, this Court concludes that Ms. Sanders is not likely to prevail at a hearing on the merits of her claim because she did not incur injury in the course of her employment, rendering her claim non-compensable. The Court, therefore, holds that SmartStyle shall not be required to pay Ms. Sanders temporary workers' compensation benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Sanders' claim against Smart Style and its workers' compensation carrier for the requested benefits is denied on the grounds of compensability. This is not a final order.

2. This matter is set for Initial Hearing on July 17, 2015, at 10:00 a.m. (CST). Instructions on how to participate in the teleconference are included below.

**Entered on this the 11th day of May, 2015.**

_____
**Joshua Davis Baker**
**Workers' Compensation Judge**

## INITIAL HEARING:

An Initial Hearing has been set with Judge Joshua Davis Baker, Court of Workers Compensation Claims. You must call (615) 741-2113 or toll free at (855) 874-0474 to participate in the Initial Hearing. Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time.

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Request for Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Clerk of Court shall submit the record to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 11th day of May, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|------|------|------|------|------|------|
| Sarah Sanders, Employee | x | | | | | 938 33rd St. Nashville, TN 37209 |
| Gerard Siciliano, Employer's attorney | | | | | x | gms@lutheranderson.com |

_____

**Penny Shrum, Clerk**
**Tennessee Court of Workers' Compensation Claims**
**WCCourt.Clerk@tn.gov**